AWERKAMP, BONILLA & GILES, PLC
6891 N. Oracle Rd., Suite 155
Tucson, AZ 85704-4287
(520) 798-5282

Ivelisse Bonilla, (SBN 023594)
ib@abdilaw.com
Shannon Giles (SBN 018786)
sg@abdilaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Ward,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>Pima County Community College District;<br>Lee Lambert in his personal capacity,<br><br>　　　　　　Defendant. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

For his Complaint, Plaintiff, William Ward, alleges as follows:

### NATURE OF THE CASE

1.　Plaintiff seeks damages arising from breach of his employment contract, violation of his due process rights under 42 U.S.C. § 1983 and wrongful termination in violation of public policy pursuant to A.R.S. § 23-1501(3)(c)(ii).

### JURISDICTION AND VENUE

2.　This Court has original subject matter jurisdiction over the Federal claim in this action pursuant to 28 U.S.C. §§ 1331 and 1343 because his claim for violation of his

due process rights under 42 U.S.C. § 1983 arises under the laws of the United States and is brought to recover damages for deprivation of equal rights.

3. This Court has supplemental jurisdiction over Mr. Ward's related claims for breach of contract and wrongful termination pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Mr. Ward's claims occurred in Pima County, Arizona.

5. On October 11, 2021, Plaintiff timely filed a Notice of Claim of his state law claims pursuant to A.R.S. §12-821.01 with each member of the Governing Board of Defendant.

**PARTIES**

6. Plaintiff William Ward is, and at all relevant times has been, a resident of Pima County, Arizona.

7. Defendant, Pima County Community College District ("PCCCD") is a college district serving the greater Tucson metropolitan area that employed Plaintiff in Pima County.

8. Lee Lambert is the Chancellor of PCCCD and is being sued in his personal capacity for, under color of state law, depriving Mr. Ward of his constitutional right to due process.

**STATEMENT OF FACTS**

9. PCCCD hired William Ward on August 14, 2000, as Superintendent of Operations.

10. In 2006, PCCCD promoted Mr. Ward to Assistant Vice Chancellor of Facilities.

11. In 2013, PCCCD promoted Mr. Ward to Vice-Chancellor of Facilities. As his promotions show, Mr. Ward's performance has always been stellar and he has always met or exceeded the expectations of his supervisors.

12.     Although he was Vice-Chancellor of Facilities, Mr. Ward was removed from the Request for Proposal process for the Comprehensive, Integrated Energy Management Program for PCCCD because he was not willing to ignore procedures and violations of the fair bidding process for the project in favor of the Trane Company.

13.     On February 15, 2021, Mr. Ward received an email from a past member of the Board of Governors, Luis Gonzales, referencing documents that had been sent by two PCCCD Board members on January 14, 2021, to Lindsey A. Perry, State Auditor for the State of Arizona, Office of the Auditor General with a request for audit of the Comprehensive, Integrated Energy Management Program Proposal.  Mr. Ward informed Chancellor Lambert of the email.

14.     In the PCCCD Agenda March 10, 2021, for a Regular Governing Board Meeting on March 10, 2021, Mr. Ward was included in the list of administrators to receive an employment contract for July 1, 2021, through June 30, 2022.

15.     A PCCCD Governing Board Study Session was scheduled for April 12, 2021. The Agenda for the Study Session included a discussion of the Comprehensive, Integrated Energy Management Program Proposal, but the session was cancelled.

16.     On April 15, 2021, Chancellor Lambert contacted Mr. Ward and asked him to remove any slides he had prepared for the Study Session unless they were about Trane Company.

17.     On April 19, 2021, Mr. Ward was contacted by PCCCD Board Member Maria Garcia.  Mr. Ward was candid with Ms. Garcia about the fact that Trane Company had been given an unfair advantage during the bidding process with PCCCD.  Mr. Ward also shared with the Board that he had been removed from the process because he was not willing to ignore procedures and violations of the fair bidding process and procurement policies to favor the Trane Company.

18. On April 19, 2021, there was a PCCCD Governing Board Study Session that included the Trane Company presentation. At this public meeting, Mr. Ward told the Board of Governors that the Facilities team had not yet had a chance to vet the final Trane Company report.

19. Board Members Luis Gonzales and Maria Garcia advised the Board that they had information about a possible procurement policy violation involving Trane Company's representative.

20. The Board of Governors requested a copy of Mr. Ward's Facilities team's assessment when complete.

21. On April 20, 2021, Chancellor Lambert asked Mr. Ward to meet with him and Ms. Carleen Thompson, the Chief of Human Resources. During that meeting, Chancellor Lambert questioned Mr. Ward about information Mr. Ward had shared with some members of the Governing Board of PCCCD on April 19, 2021. Chancellor Lambert also questioned Mr. Ward about his statement to Ms. Garcia during the June 3, 2020 Board Meeting that he had been removed from the process and his statement at the April 19, 2021 Study Session that the Facilities review of the Trane report was not yet finalized.

22. On April 22, 2021, Mr. Ward attended a meeting via Zoom with leadership from the Coalition for Accountability, Integrity, Respect and Responsibility ("C-FAIRR") and Board Members Luis Gonzales and Maria Garcia to discuss emails sent from PCCCD staff from Jim Knutson at Trane Company and the contract audit that was underway.

23. On April 23, 2021, Eddie Genna, a representative of Maricopa County Community Colleges reached out to Mr. Ward to schedule a meeting with him and PCCCD Board Member Catherine Ripley.

24. On April 26, 2021, Mr. Ward met with Mr. Genna and PCCCD Board Member Catherine Ripley and discussed with them why he was removed from leading audit of the project and Ms. Ripley's concerns about the Trane contract.

25. On April 29, 2021, the Chancellor issued to Mr. Ward a memorandum titled Performance and Conduct Concerns. In that memorandum, the Chancellor instructed Mr. Ward to not have any contact, directly or indirectly, with the Board without consulting him, and threatened Mr. Ward with termination.

26. On May 20, 2021, General Counsel of PCCCD, Jeff Silvyn, and Director of Human Resources Carleen Thompson took over a Zoom meeting on another topic and informed Mr. Ward that he was on administrative leave.

27. On June 12, 2021, Mr. Ward received a contract by the Governing Board for the fiscal year 2021-2022. The contract was signed by the Governing Board on June 14, 2021, and Mr. Ward accepted the contract and signed it on June 15, 2021.

28. On June 29, 2021, Chancellor Lambert canceled Mr. Ward's contract and terminated his employment effective June 30, 2021.

29. Upon information and belief, the decision to terminate Mr. Ward's employment was made by Chancellor Lambert.

30. Prior to terminating Mr. Ward's contract through June 30, 2022, Chancellor Lambert did not give Mr. Ward a hearing or an opportunity to be heard.

31. Mr. Ward had a property right to his employment with PCCCD.

32. PCCCD and Chancellor Lambert have deprived Mr. Ward of his constitutional right to continued employment without due process.

33. Chancellor Lambert terminated Mr. Ward's employment because Mr. Ward was candid with the Board about the fact that the Trane Company had an unfair advantage during the bidding process and that he had been removed from the process because he was not willing to ignore procedures and violations of the bidding and purchasing processes to favor the Trane Company.

34. The termination of Mr. Ward's employment by PCCCD and Chancellor Lambert before the end of his contract and the deprivation of his constitutional right to due process was done recklessly and/or callously indiferrently to his federally protected rights.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

35. Mr. Ward had a Contract of Employment in the position of Vice Chancellor for Facilities with PCCCD for the period July 1, 2021 through June 30, 2022 that was approved by the Governing Board and fully-executed.

36. Mr. Ward had a contract and property right to be employed by PCCCD through at least June 30, 2022.

37. PCCCD terminated Mr. Ward's employment before the end of his contract without giving him an opportunity to be heard.

38. PCCCD's termination of Mr. Ward's employment before the end of his contract constitutes a breach of contract.

39. Because this matter arises out of a contract, Mr. Ward is entitled to an award of attorneys' fees pursuant to A.R.S. § 12-341.01

## SECOND CAUSE OF ACTION

### (Violation of Due Process Under 42 U.S.C. § 1983)

40. Mr. Ward had an expectation of continued employment through at least June 30, 2022.

41. Mr. Ward had a contract and property right to be employed by PCCCD through June 30, 2022.

42. PCCCD and Chancellor Lambert terminated Mr. Ward before the end of his contract without giving him the right to be heard.

43. PCCCD and Chancellor Lambert deprived Mr. Ward of his constitutional right to continued employment without due process.

44. The termination of Mr. Ward's employment by PCCCD and Chancellor Lambert before the end of his contract and the deprivation of his constitutional right to due process was done recklessly and/or callously indiferrently to his federally protected rights.

45. The termination of Mr. Ward by PCCCD and Chancellor Lambert before the end of his contract without notice and the opportunity to be heard is a violation of his due process rights under 42 U.S.C. § 1983.

46. Mr. Ward has suffered excessive damages, including punitive damages, as a result of PCCCD's violation of his due process rights.

### THIRD CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy)**

47. PCCCD terminated Mr. Ward because he reasonably disclosed to members of the Governing Board of PCCCD actions that he reasonably believed to be violations of Arizona state law.

48. PCCCD's termination of Mr. Ward's employment constitutes wrongful termination in violation of public policy pursuant to A.R.S. § 23-1501(3)(c)(ii).

49. Because PCCCD wrongfully terminated his employment, Mr. Ward has suffered lost wages and emotional distress and will continue to do so in the future.

50. Mr. Ward is entitled to an award of attorneys' fees pursuant to § 12-341.01.

### REQUEST FOR JURY

51. Plaintiff requests a trial by jury to the fullest extent permitted by law.

### RELIEF SOUGHT

WHEREFORE, Plaintiff requests judgment against Defendant awarding him the following:

    (a) Compensatory damages for damages for breach of contract;

    (b) Compensatory damages to professional reputation, lost income, and emotional distress;

(c) Punitive damages;

(d) Attorneys' fees and costs incurred in this lawsuit; and

(e) Any other equitable relief this Court deems appropriate and just.

RESPECTFULLY SUBMITTED this 14th day of January, 2022.

AWERKAMP & BONILLA, PLC

By /s/   Shannon Giles
Ivelisse Bonilla
Shannon Giles

*Attorneys for Plaintiff*